UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARTELL JONES, | Case No. 2:23-cv-12509 |
| Plaintiff, | Susan K. DeClercq<br>United States District Judge |
| v. | |
| HEINONEN, *et al.*, | Curtis Ivy, Jr.<br>United States Magistrate Judge |
| Defendants.<br>_____________________________/ | |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 75)**

## I. PROCEDURAL HISTORY

Pending before the Court is Defendants Correctional Officers ("CO") Doyle, Heinonen, and Kinaia's *Motion for Summary Judgment* (ECF No. 75). Pro se Plaintiff Martell Jones, proceeding pro se, filed this civil rights matter on October 4, 2023. (ECF No. 1). The alleged events occurred at the Woodland Center Correctional Facility ("WCC") within the Michigan Department of Corrections ("MDOC"). Plaintiff sues Defendants, who are MDOC corrections officers, for various claims. That said, as some claims and Defendants were dismissed earlier in the case, only his First Amendment retaliation and Eighth Amendment claims remain against CO Doyle, CO Heinonen, and CO Kinaia. (*See* ECF Nos. 7, 41, 63,

72, 83). This case was referred to the undersigned for all pretrial proceedings. (ECF No. 13).

For the reasons below, the undersigned **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED**.

## II. BACKGROUND

### A. Complaint Allegations

Plaintiff alleges that on December 27, 2021, he notified Defendant Doyle that he was experiencing chest pain and difficulty breathing. (ECF No. 1, PageID.5–6, ¶ 20). Plaintiff requested that Doyle summon medical staff to provide him with medical care. (*Id.*) Doyle denied Plaintiff's request and told him to "deal with it." (*Id.* at PageID.6, ¶ 21). After a subsequent request and denial, Plaintiff informed Defendant Doyle that he would file a grievance against her if she continued to deny his request to see medical staff. (*Id.* at ¶ 28). Defendant Doyle responded "I got something for prisoners who threaten to write grievances against me! I'm going to write you a threatening behavior and put your ass on non-bond!" (*Id.* at ¶ 29). Plaintiff interpreted this statement to mean that Defendant Doyle would retaliate against him by writing a false misconduct report accusing Plaintiff of threatening behavior. (*Id.* at PageID.7, ¶ 30). Defendant Rose then ordered Plaintiff to go on lock-down status "on behalf of Doyle." (*Id.* at ¶ 36). Later, while passing out dinner trays, Defendant Doyle stopped at Plaintiff's cell and

stated "[s]mart-ass, you won't be eating tonight!" and denied Plaintiff his dinner tray. (*Id.* at PageID.7-8, ¶¶ 38–39). After Plaintiff requested a dinner tray, Defendant Kinaia turned off Plaintiff's water supply at Defendant Doyle's direction. (*Id.* at PageID.8, ¶¶ 40–41).

Later that evening, a flood in the neighboring cell began to spill over into Plaintiff's cell. (*Id.* at ¶¶ 43–44). A response team including Defendants Martell, Heinonen, and John Doe responded to the scene and placed Plaintiff in restraints. (*Id.* at ¶ 44). Plaintiff was moved to a shower cage, stripped of his clothing, and, at the direction of Defendant Nelson, underwent a body cavity search. (*Id.* at PageID.9, ¶ 49). Defendant John Doe stood outside the shower cage with an operative hand-held camera. (*Id.* at ¶ 51). Defendant Martell pinned Plaintiff to the wall while Defendant Heinonen cut off Plaintiff's clothes. (*Id.* at ¶¶ 54–56). Heinonen conducted a body cavity search of Plaintiff by "spreading Plaintiff's buttocks with his hands, and penetrating Plaintiff's anus with his finger." (*Id.* at PageID.10, ¶ 60). Plaintiff alleges that the search was overly intrusive and conducted using excessive force. (*Id.* at PageID.11, ¶¶ 66–71). Plaintiff further alleges that this interaction was a sexual assault. (*Id.* at PageID.16, ¶ 110).

After these alleged events took place, Plaintiff was escorted back to his cell and placed on segregation status. (*Id.* at PageID.11, ¶ 72). Defendant Doyle fabricated a retaliatory misconduct report accusing Plaintiff of threatening

behavior. (*Id.* at ¶ 73). As a result, Plaintiff lost thirty days of privileges. (*Id.* at ¶ 74). Plaintiff experienced water deprivation as his water remained off "for days" during his confinement in segregation. (*Id.* at PageID.12, ¶¶ 76–77). During this time, Plaintiff informed Defendants that his cell's water was off and made multiple requests for it to be turned back on. (*Id.* at ¶ 78).

**B. Instant Motion for Summary Judgment**

Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish the elements of each of his remaining claims. (ECF No.75, PageID.444–445, ¶¶ 1–3). Defendants have also asserted qualified immunity and argue that Plaintiff cannot dispel it. (*Id.*). First, regarding the First Amendment retaliation claim against Defendant Kinaia, Defendants argue that the Administrative Law Judge's ("ALJ") findings are entitled to preclusive effect and that Plaintiff cannot establish that he engaged in protected conduct, that there was an adverse action in response to that conduct, and that the two were connected. (*Id.* at ¶ 1). Second, regarding the Eighth Amendment cruel and unusual punishment claim against Defendant Heinonen, Defendants argue that Plaintiff's allegations should be disregarded because of blatant contradictions with his pre-complaint account and that he cannot establish the objective or subjective components of an Eighth Amendment claim. (*Id.* at ¶ 2). Finally, regarding the First Amendment retaliation claim against Defendant Doyle, Defendants argue that

Plaintiff cannot establish that Doyle was personally involved in an unconstitutional action. (*Id.* at ¶ 3).

Plaintiff responds that he engaged in protected conduct when he informed Defendant Doyle that he planned to file a grievance against her. (ECF No. 85, PageID.532). Plaintiff also asserts that he engaged in protected conduct when he requested to be fed. (*Id.* at PageID.533). Plaintiff asserts that Doyles' threat, along with the major misconduct ticket that was issued against him, qualifies as adverse action. (*Id.* at PageID.534). Similarly, Plaintiff argues that Defendant Kinaia's compliance with Doyle's order to restrict Plaintiff's water access counts as an adverse action. (*Id.* at PageID.535). Plaintiff contends that causation exists between his protected conduct and the adverse actions because Doyle immediately became irate and threatened Jones with a major misconduct ticket after he informed her of his plan to file a grievance against her. (*Id.* at PageID.536). Plaintiff adds that Doyle acted on her threat that day, issuing a false major misconduct ticket that resulted in Plaintiff being confined in segregation, losing privileges, and being placed on restrictions. (*Id.*). Plaintiff further contends that Defendant Kinaia turned off his water system at the behest of Doyle. (ECF No. 85, PageID.536). Plaintiff asserts that the temporal proximity between his protected conduct and the adverse actions are strong indicators that the adverse actions were caused by the protected activity. (*Id.*). Finally, Plaintiff states that there are

genuine issues of material fact that preclude summary judgment for Defendants on Plaintiff's Eighth Amendment claims. (*Id.* at PageID.539–541).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must

"make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citation omitted). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

That Plaintiff is pro se does not reduce the obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). "Once a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz [v. Sorema, N.A.*, 534 U.S. 506, 512–13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

## IV. DISCUSSION

### A. First Amendment Retaliation

A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (citation modified).

"Protected conduct in the statutory settings is, clearly, that conduct which the statute defines as protected: for example, the National Labor Relations Act protects certain kinds of collective action on the part of employees." *Thaddeus-X*, 175 F.3d at 387 (citation modified). Similarly, retaliation against an individual because they engaged in conduct that is explicitly protected by the Constitution is prohibited. *Id.* at 387. Inmates have a First Amendment right to lodge grievances against prison officials, written or oral, on their own behalf. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Merely threatening to file a legitimate grievance is also arguably protected conduct. *See Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (citations omitted). Since "[n]othing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form[,]" informal grievances (such as Plaintiff's letters) and threats to sue

may be protected conduct as well. *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (citation omitted); *Dean v. Conley*, 198 F.3d 244 (6th Cir. 1999) (threat to file lawsuit considered protected activity). The right to lodge grievances applies only to non-frivolous grievances. *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct." *Maben*, 887 F.3d at 264 (quoting *King v. Zamaira*, 680 F.3d 686, 699 (6th Cir. 2012)).

An adverse action is one that would "deter a person of ordinary firmness from engaging in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). "Actual deterrence need not be shown." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (citing *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002)) (emphasis original). "[T]his element is not an overly difficult one for the plaintiff to meet." *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010). Consequently, "unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury." *Bell*, 308 F.3d at 603 (citation and internal quotation marks omitted).

"Under the third element, the subjective motivation of the defendants is at issue." *Maben*, 887 F.3d at 262 (citation omitted). But if the prison official can show that the action would have occurred even if the plaintiff had not engaged in protected activity, there is an absence of "but for" causation and there is no valid

claim of retaliation. *See Good v. Walworth*, No. 21-1429, 2023 WL 9320823, at *3 (6th Cir. Aug. 22, 2023). A plaintiff's subjective belief that he has been retaliated against is insufficient to withstand summary judgment. *Green v. Cent. Ohio Transit Auth.*, 647 F. App'x 555, 561 (6th Cir. 2016).

1. Misconduct Ticket and Issue Preclusion

Plaintiff asserts that he engaged in protected conduct when he orally threatened to file a grievance against Doyle if she continued to deny him medical care. (ECF No. 85, PageID.532). Plaintiff contends that his threat to file a grievance made Doyle "irate" and she responded "I got something for prisoners who threaten to write grievances against me! I'm gonna [sic] write you a threatening behavior and put your ass on non-bond!" (*Id.* at PageID.534). Plaintiff asserts that Doyle then wrote a false misconduct ticket against him, which caused him to be placed in segregation, and losing 30 days of privileges. (*Id.*).

Defendant describes a different set of events. According to Doyle, she wrote Plaintiff a major misconduct ticket because Plaintiff threatened to have a "hit" put on her to have her killed. (ECF No. 75, PageID.451). Defendant asserts that this version of events is supported by an ALJ finding that Plaintiff did in fact threaten to kill Defendant Doyle. (*Id.*). Defendant also argues that the ALJ's findings that Plaintiff threatened Doyle and he was not denied a food tray, but rather he threw it back at the officers, precludes Plaintiff from relitigating these facts here. (*Id.* at

PageID.455). Yet Plaintiff disputes this assertion, arguing that the ALJ's findings are not entitled to preclusive effect because he did not have an adequate opportunity to litigate the dispute. (ECF No. 85, PageID.538, 542–43). Plaintiff argues that his ability to appeal the decision was hindered by Hearing Investigator Mikat, who refused to provide Plaintiff with a Request for Rehearing form (CSJ–418), which is necessary to appeal an ALJ's decision. (*Id.* at PageID.539, 543). Plaintiff argues that he did not receive the form even after he made "multiple written and verbal requests." (*Id.*).

Courts in the Sixth Circuit have held that some administrative proceedings are entitled to preclusive effect, but this is not always the case. To determine whether the courts must give preclusive effect to "factfinding from Michigan prison hearings," courts look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Maben*, 887 F.3d at 259 (quoting *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted)). Not every factual finding by a prison administrator is entitled to preclusive effect. Courts should consider the

circumstances, such as whether the issues were actually litigated and decided, and the fairness and accuracy of the factual findings made by the hearing officer. *Id.*

The first requirement—that the state agency acted in a judicial capacity—is uncontested and is clearly met. The ALJ held a hearing where he took evidence and testimony and rendered a decision on the Class I major misconduct ticket. Major misconduct hearings meet the "judicial capacity" requirement "since the hearing officer considers evidence from both parties, allows both parties to argue their versions of the facts at a formal hearing, and issues a written final decision that is subject to direct review in state court." *See Roberson v. Torres*, 770 F.3d 398, 403 (6th Cir. 2014); *Peterson*, 714 F.3d at 913 ("Similarly, both Michigan courts and this Circuit have long held that the 'Michigan prison hearing officers' themselves are 'full time judicial officer[s].'") (citing *Shelly v. Johnson,* 849 F.2d 228, 230 (6th Cir. 1988) (per curiam); *Jones v. Sherman,* 243 Mich. App. 611 (2000)).

While Plaintiff expresses his disagreement with the ALJ's findings, the undersigned finds that the second factor is satisfied because the ALJ resolved disputed issues of fact—whether Plaintiff was guilty of threatening behavior toward Defendant Doyle and whether he was denied a food tray. (*See* ECF No. 85, PageID.538–39). Plaintiff's disagreement with the ALJ's findings could have been

addressed on appeal and does not change the fact that the ALJ resolved disputed issues of fact.

As for the third factor—whether Plaintiff had an adequate opportunity to litigate the factual dispute—Plaintiff maintains that he was not given an opportunity to appeal the ALJ's decision. Defendants argue that even accepting Plaintiff's claim as true that he was prevented from filing an administrative appeal, he could file an action in state court but failed to do so. (ECF No. 86, PageID.550–551). As a result, Defendants argue Plaintiff has not offered enough evidence to dispel issue preclusion. In *Maben v. Thelen*, the Sixth Circuit provided a thorough review of the protections provided to Michigan prisoners in misconduct hearings:

> In *Peterson*, the Court found that the "hearing officer considered evidence that was put into the record by [the prisoner] and [the officer], allowed the parties to argue their version of the facts at a formal hearing, and issued a written final decision that, had [the prisoner] chosen to appeal, could have been subject to direct review in state court." *Id*. The Court noted the "whole raft of judicial-type protections available to Michigan prisoners in major misconduct hearings." *Id*. This included that "the accused prisoner must receive an 'evidentiary hearing without undue delay,' be given 'reasonable notice' of the hearing, receive 'an opportunity to present evidence' and to present 'oral and written arguments on issues of fact,' and be allowed to submit 'rebuttal evidence' to the evidence against him." *Id*. at 912 (citing Mich. Comp. Laws § 791.252(a), (b), (d), (e)). With regard to evidence, "any objections to the evidence's admissibility must be resolved and explained on the record," *id.* (citing § 791.252(g)), and "all admitted evidence must be made part of the record," *id.* (citing § 791.252(h)). "[T]he presiding hearing officer must be an attorney, [who] can 'administer an oath or affirmation to a witness' and 'take depositions' as a part of his fact-finding role, must be impartial and must recuse if the accused files a motion successfully

> showing bias, must abstain from ex parte communications with the accused prisoner and the accusing Department of Corrections staff, and must make an official record of the hearing at which he presides." *Id*. at 912–13 (citing Mich. Comp. Laws §§ 791.251(6); 791.252(f), (i), (j); 791.253). Finally, the "hearing officer must conclude the process by issuing a written final decision that is based solely on the preponderance of the evidence in the record, and that decision must be immediately mailed to the accused prisoner," who "has a right to appeal it within the agency and then ... to state court." *Id*. at 913 (citing Mich. Comp. Laws §§ 791.252(k), 791.254, 791.255).

887 F.3d at 260. Plaintiff does not dispute that he was provided with a hearing and the opportunity to present oral and written arguments, as well as to present evidence, call witnesses, and to view and rebut evidence presented by MDOC. Instead, his sole argument is that his ability to appeal the ALJ's decision was thwarted because his requests to be provided with the Request for Rehearing form (CSJ-418) went unanswered. (ECF No. 85, PageID.538–39, 542–43).

Plaintiff's argument fails for two reasons. First, Plaintiff has established no bases to appeal the finding. *See Jones v. Nurkala*, No. 2:24-CV-00053, 2026 WL 2338932, at *5 (W.D. Mich. Apr. 7, 2026) (finding when the plaintiff alleged he was not provided the form to appeal the ALJ's decision, he had "not established that he had any basis to appeal the finding," and solely stated he did not make the alleged statement), *report and recommendation adopted*, 2026 WL 2117174 (W.D. Mich. July 23, 2026). Plaintiff merely disputes the ALJ's findings by claiming that he did not make the threat and the ALJ did not address his claim that the action was in retaliation for expressing his intent to file a grievance. (ECF No. 85,

PageID.538–39). But the ALJ clearly found that there was sufficient evidence for the ALJ to conclude that Plaintiff did threaten Defendant, and when questioned why Defendant would have fabricated the misconduct to justify taking the tray, Plaintiff responded "I don't know." (ECF No75-4, Page ID.484). Even so, Plaintiff's argument also fails because even if he were not provided with the Request for Rehearing form as he alleges, he should have sought judicial review in the state court system and raised this defense to any exhaustion argument Defendants may have raised. *See Floyd v. Haire*, No. 2:09-CV-230, 2010 WL 3885488, at *4 (W.D. Mich. Aug. 4, 2010), *report and recommendation adopted*, 2010 WL 3843779 (W.D. Mich. Sept. 28, 2010) (finding plaintiff failed to exhaust his administrative remedies even when the plaintiff submitted his request for a rehearing but never received a response, because "he should have sought judicial review pursuant to MCL 791.255 . . ."). Mich. Comp. Laws § 791.255 states that

> Within 60 days after the date of delivery or mailing of notice of the decision on the motion or application for the rehearing, if the motion or application is denied or within 60 days after the decision of the department or hearing officer on the rehearing, a prisoner aggrieved by a final decision or order may file an application for direct review in the circuit court in the county where the petitioner resides or in the circuit court for Ingham county.

Construing the facts in a light most favorable to Plaintiff as the non-movant, the undersigned finds that Plaintiff was given a chance to appeal the ALJ's decision and failed to do so. *Maben*, 887 F.3d at 260; *Peterson*, 714 F.3d at 916 (finding

plaintiff was entitled to raise his concerns in an appeal to state court and "the results of his failure to use those procedures" cannot "be considered proof that the procedures themselves were somehow inadequate.") (citing *Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 550 (6th Cir. 2012) (noting that a party's "failure to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy")) (citation modified); and Mich. Comp. Laws §§ 232.251, *et seq*.); *Thomas v. Thomas*, No. CV 11-12193, 2015 WL 13741250, at *5 (E.D. Mich. Aug. 21, 2015) (holding that a party's "lack of knowledge with regard to the appeals process does not render the process insufficient under *Elliott*"), *report and recommendation adopted*, 2016 WL 146484 (E.D. Mich. Jan. 13, 2016).

The fourth and final factor ties the first three together; it provides that if the first three factors are met, the agency's finding of fact must be given "the same preclusive effect it would be given in state courts." *Maben*, 887 F.3d at 260 (quoting *Peterson*, 714 F.3d at 911–13). Since the undersigned finds that the first three factors are all met, the ALJ's findings with regard to Plaintiff's misconduct ticket in connection with the food tray incident should be given the same preclusive effect here that it would give a state court ruling. *ABCDE Operating, LLC v. City of Detroit*, 254 F. Supp. 3d 931, 947 (E.D. Mich. 2017) (applying "Michigan's law of issue preclusion in order to determine the preclusive effect of the state court's ruling upon Plaintiff's federal constitutional claims in this

action.") (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001); *Strutz v. Hall*, 308 F. Supp. 2d 767, 775 (E.D. Mich. 2004)). The ALJ expressly found that video evidence shows that when an officer unlocked the food slot, the officer jumped back as if under assault; although they initially passed Plaintiff's cell, a porter came back and provided Plaintiff with a meal tray, despite Plaintiff's claim to the contrary; Plaintiff "took his slot hostage, holding it open with his arm"; and that he "stuck his food tray back out and thew it all over base." (ECF No.75-4, PageID.484). Plaintiff's entire defense at the hearing is that time on the misconduct ticket (18:00) did not match the timestamp within the video evidence (18:31). (*Id.*). Upon review of the evidence present, or not presented, at the hearing and circumstances surrounding the incident, the ALJ upheld the charge for threatening behavior. (*Id.*). Therefore, summary judgment for Defendant on Plaintiff's First Amendment retaliation claim related to the alleged withholding of food in retaliation for threatening to file a grievance is appropriate.

2. Water Restriction

Plaintiff contends that his water was turned off without proper approval and in violation of MDOC policy. (ECF No. 1, PageID.13, ¶ 87). Plaintiff alleges that Defendant Doyle skipped him during the distribution of dinner trays. (ECF No. 85, PageID.533). Plaintiff alleges that when he requested a dinner tray Doyle responded by telling Defendant Kinaia: "Turn his f****** water off! He doesn't

get to drink either!" —a command that Defendant Kinaia complied with. (*Id.*). Plaintiff alleges that he was engaged in protected conduct when he requested a dinner tray and that Defendant Doyle's response—ordering his water to be turned off—was done in retaliation to this request. (*Id.*). Plaintiff also alleges that he was "forced to endure days without the consumption of water during the imposed water restriction" and that he "experienced physical pain and emotional distress as a result of being deprived water." (ECF No. 1, PageID.13–14, ¶¶ 90–98).

Defendant denies those allegations, arguing that Doyle never placed Plaintiff on water restriction status—Deputy Warden Godfrey placed Plaintiff on water restriction status. (ECF No. 75, PageID.453). And Defendant states that if Defendant Kinaia did in fact turn off Plaintiff's water, that action does not meet the requirements for First Amendment retaliation because Plaintiff's threat to kill Doyle is not protected conduct. (*Id.* at PageID.457). The defendants also argue that Plaintiff cannot establish elements (2) —that an adverse action occurred or (3) —that there was a causal connection between Plaintiff's alleged protected conduct and the adverse action. (*Id.* at PageID.457–58).

Again, the ALJ's findings contradict Plaintiff's allegations. The hearing report describes the video footage of the relevant events. (ECF No. 75–4, PageID.483–84, Hearing Report). The ALJ found that the Prisoner was skipped during the initial meal pass because he made the alleged threat to Defendant Doyle;

the ALJ concluded that the prisoner had no other explanation for why the guards would skip him. (*Id.* at PageID.484). The ALJ found that Plaintiff did in fact receive a food tray a few minutes later, which he threw out of his cell and onto the floor. (ECF. No. 75–4, PageID.484). This conflicts with Plaintiff's claim that he was retaliated against for requesting a dinner tray because he made threats to the officers, and he had received one and threw it back out of the tray slot. As the undersigned already found, the ALJ's findings are entitled to preclusive effect, thus, Plaintiff fails to establish that he engaged in protected conduct or that he suffered an adverse action.

As it relates to the water restriction, it also appears that Plaintiff does not name the correct defendant. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) ("[T]he allegations must demonstrate that each defendant officer, through his or her own individual actions, personally violated plaintiff's rights under clearly established law"). Both Parties agree that a flood occurred in the neighboring cell and spilled over into Plaintiff's cell and staff had to intervene to stop the flooding. (*See* ECF No. 75-2). Plaintiff's deposition testimony reflects that the prisoner in the cell next to his began flooding his own cell and Plaintiff heard comments to that effect as well as heard flushing sounds. (*Id.* at PageID.478). Plaintiff further indicated that staff intervened within minutes. (*Id.*). Defendants argue that this flood led to Plaintiff being placed on water restriction

status by Deputy Warden Godfrey, not Defendant Doyle. (ECF No. 75–9, PageID.501, Ex. H). An affidavit signed by Defendant Doyle also indicates that she did not place Plaintiff on water restriction status; rather, "Plaintiff was placed on water restriction status by an MDOC supervisor." (ECF No. 75–3, PageID.481, Ex. B). Warden Godfrey also submitted an affidavit that she authorized placing Plaintiff and the prisoner housed next to him on a water restriction due to an incident that involved flooding in their cells. (ECF No. 75-9, PageID.500–01). She also attests that while the running water was to remain off to prevent further flooding, Plaintiff was routinely offered water by staff until running water was restored. (*Id.*).

Defendants have submitted sufficient evidence to show that it was Warden Godfrey, not Defendants Doyle or Kinaia, who imposed the water restriction because of the flooding incident in the neighboring cell, and Plaintiff has failed to rebut this evidence. Plaintiff is also unable to establish any protected conduct that he engaged in that led to the water restriction, as Plaintiff admitted his neighbor flooded their cells and staff had to intervene. And despite his claim that his request for a dinner tray led to the water restriction the ALJ found Plaintiff threatened Defendant Doyle and that he was provided a food tray, which he voluntarily threw back out of his cell. Therefore, summary judgment for Defendants Doyle and

Kinaia on Plaintiff's First Amendment retaliation claim related to the water restriction is appropriate.

**B. Eighth Amendment Claim**

Plaintiff alleges that the cavity search he endured violated his right to be free from excessive force and sexual assault. (ECF No. 1, PageID.16, ¶110). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). "[T]he Eighth Amendment prohibits punishments which, . . . though not physically barbarous, 'involve the unnecessary and wanton infliction of pain, or are grossly disproportionate to the severity of the crime.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation and quotation marks omitted). But "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (quotation makes omitted)). While "prison conditions may be uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment[,] . . . the Amendment also imposes duties on [prison] officials, who must provide humane conditions of confinement." *Burley v. Miller*, 241 F. Supp. 3d 828, 836 (E.D. Mich. 2017) (internal quotations and citations omitted). The Sixth Circuit stated

that in considering whether an Eighth Amendment violation has occurred, a court must consider "[t]he circumstances, nature, and duration of a deprivation." *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006).

Defendant Heinonen argues that he is entitled to summary judgment because Plaintiff cannot establish an Eighth Amendment claim. First, Defendant argues that Plaintiff's allegations of a cavity search should be disregarded because a signed pre-complaint account contradicts his claim. (ECF No. 75, PageID.463). Defendant also argues that if the Court credits Plaintiff's allegations, he still cannot establish the subjective component of an Eighth Amendment claim, and alternatively, he is entitled to qualified immunity as "precedent does not establish 'beyond debate' that punishing a prisoner for threatening to murder a staff member violates the First Amendment." (*Id.* at PageID.466–68, 470–74).

Plaintiff's October 4, 2023, Complaint alleges that following the cells being flooded, Plaintiff was taken to the shower cage, and on the way Defendant Doyle stated "I'll teach you not to mess with me."[1] (ECF No. 1, PageID.9, ¶ 48). Plaintiff alleged that Defendant Heinonen and CO Martell were ordered to cut

[1] As an aside, to the extent that Plaintiff may be attempting to argue the search was in retaliation for the prior incidents, the undersigned has already found Plaintiff has failed to state a claim for First Amendment retaliation as the facts show Plaintiff threatened the life of a correctional officer, he was provided a food tray and he threw it back at the officers, and his water was not shut off due to him requesting a food tray as Plaintiff's own testimony establishes that the water was turned off following his neighbor flooding the cells. The evidence further supports the fact that the strip search was conducted as a result of the threat and the flooding incident.

Plaintiff's clothes off and conduct a body cavity search. (*Id.* at ¶ 49). Plaintiff was ordered to back out of the shower cage in restraints and he complied. (*Id.* at ¶ 52–53). CO Martell pinned Plaintiff's face and body against the wall and Defendant Heinonen cut off Plaintiff's clothes with scissors. (*Id.* at PageID.9–10, ¶¶ 54–56). Upon inquiring into what was happening, Plaintiff was told they were ordered to conduct a strip search, to which Plaintiff responded that he felt violated. (*Id.* at PageID.10, ¶¶ 57–58). Once Plaintiff's clothes were cut off, Plaintiff alleges that Defendant performed a body cavity search by spreading Plaintiff's "buttocks with his hands and penetrating Plaintiff's anus with his finger," and "lifted Plaintiff's genitals" with his hands. (*Id.* at ¶¶ 60–61). Plaintiff was then dressed in a "suicide gown." (*Id.* at PageID.10, ¶ 62). Plaintiff alleged that the "overly intrusive strip and body cavity search" caused him physical pain, humiliation, and emotional distress. (*Id.* at PageID.11, ¶ 66).

Defendant Heinonen submitted an affidavit in support of the motion for summary judgment that confirms Plaintiff's initial allegation that on December 27, 2021, he and two other officers escorted Plaintiff from his cell to the shower cage to conduct a visual strip search and dress him in a protective gown, outside the view of other prisoners. (ECF No. 75-5, PageID.487–88). Defendant Heinonen stated that the visual search was being conducted because of a cell flooding incident in Plaintiff's unit and Plaintiff's recent threats to kill a corrections officer.

(*Id.*). While changing Plaintiff into an observation gown, Defendant Heinonen attests that he did not touch Plaintiff's genitals or anus, not did any other officer. (*Id.*). Once dressed in his observation gown, Plaintiff was returned to his cell. (*Id.*). Defendant Heinonen stated that he acted in good faith and did not apply any force with sadistic or malicious intent. (*Id.*).

On December 27, 2021, Plaintiff reported a Prison Rape Elimination Act ("PREA") complaint to Cpt. Tipa, and Plaintiff was later interviewed by Sgt. Colon. (ECF No. 75-6, PageID.491). The complaint states that Plaintiff refused to be video recorded or exit his cell for the interview. (*Id.*). Plaintiff told Sgt. Colon that he was handcuffed in the shower cage, and Sgt. Martell and Defendant Heinonen conducted a strip search and placed him in a protective gown, but during the search his clothes were removed, and Officer Heinonen lifted his scrotum. (*Id.*). The PREA complaint was signed and certified that the information is "true and accurate to the best of my knowledge and belief." (*Id.*).

The warden assigned the complaint to Sgt. Powell, who prepared a questionnaire and interviewed Plaintiff on January 24, 2022. (*Id.* at PageID.492; ECF No. 75-8, PageID.498). Plaintiff indicated that on December 27, 2021, at around 20:00 hours, he was taken to the shower cage, and officers cut his clothes off and one of the officers moved toward Plaintiff's front and "lifted [his] junk." (ECF No. 75-8, PageID.498). Plaintiff responded that he felt violated and asked,

"why are you touching my nut sack," to which the officer responded it was to make sure he did not have anything. (*Id.*). He was asked if had anything further that will aid in the investigation and Plaintiff responded "no." (*Id.*).

Additionally, Sgt. Powell submitted an affidavit indicating that Plaintiff never claimed during her PREA interview that he underwent a cavity search or that his anus was touched, only that his testicles were lifted. (ECF No. 75-7, PageID.495–96). She stated that she asked Plaintiff if he had anything further to add and he responded that he did not. (*Id.*). Sgt. Powell stated that during the interview she contemporaneously and accurately wrote his answers on the interview form, that she provided Plaintiff with the form to review for accuracy, and then they both signed at the bottom. (*Id.*).

In Plaintiff's response in opposition to Defendants' motion and in an attached January 22, 2026, affidavit, Plaintiff asserts that he informed Sgt. Powell that Defendant Heinonen conducted a body cavity search on him as described above, and Sgt. Powell ignored and excluded this fact from the investigator report. (ECF No. 85, PageID.540, 543). Plaintiff further states, for the first time, that Sgt. Powell coerced him into signing the investigative report that she prepared by threatening not to submit the report or conduct an investigation if he refused to sign it. (*Id.*).

In their reply brief Defendants note that Plaintiff's newly raised claim that he was coerced into signing the form, is another conflicting statement as it conflicts with his deposition testimony. (ECF No. 86, PageID.551). During his September 10, 2025, deposition, Plaintiff testified that the officer spread his buttocks and put his finger inside Plaintiff's anus. (ECF No. 86-1, PageID.554). He stated that he reported that information to the PREA investigator when he made his verbal complaint. (*Id.*). Plaintiff was asked if, according to him, the investigator "just failed to write that part of it down," to which Plaintiff responded, "I don't know their – reasoning for not documenting verbatim what I said." (*Id.* at PageID.554–55).

"When a claimant's testimony contradicts the allegations in his complaint, we will credit his later testimony." *Leary v. Livingston Cnty.*, 528 F.3d 438, 444 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) (noting that a summary judgment motion "requires the nonmoving party to go beyond the pleadings")). Even so, a plaintiff "may not create a triable issue of fact by saying one thing in a complaint and something else in a deposition." *Id.* "In deciding in its discretion whether to consider a post-deposition affidavit on summary judgment, a district court 'must first consider whether the affidavit directly contradicts the nonmoving party's prior sworn testimony.'" *Wendorf v. JLG Indus., Inc.*, 683 F. Supp. 2d 537, 544 (E.D. Mich. 2010) (quoting *Aerel, S.R.L. v.*

*PCC Airfoils, L.L.C.*, 448 F.3d 899, 908 (6th Cir. 2006). "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." *Id.* "If, on the other hand, there is no direct contradiction, then the district court should not strike or disregard that affidavit unless the court determines that the affidavit 'constitutes an attempt to create a sham fact issue.'" *Id.* (quoting *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir. 1986)).

Here, Plaintiff has provided multiple statements that directly conflict as to what occurred during the December 27, 2021 incident and following PREA complaint and investigation. Plaintiff's December 2021 PREA complaint and January 2022 investigation interview report did not mention an anal cavity search, solely lifting his genitals as part of a visual strip search. (ECF Nos. 75-6, PageID.491; 75-8, PageID.498). Plaintiff's October 2023 Complaint in this case is the first mention of an anal cavity search. During Plaintiff's September 2025 deposition, he testified that he did not know why the officers failed to include his report of an anal cavity search in the complaint or the investigation interview report. (ECF No. 86-1, PageID.554–55). Yet in his response in opposition to Defendants' motion for summary judgment and his attached affidavit, Plaintiff, for the first time, claims that Sgt. Powell coerced him to sign the investigation report she prepared under threat that she would not file the report or conduct an

investigation. (ECF No. 85, PageID.540, 543). Plaintiff's affidavit directly contradicts his prior sworn testimony, and Plaintiff has provided no persuasive justification for the contradictions. Thus, considering the evidence as a whole, his affidavit is due to be stricken as Plaintiff may not create a triable issue of fact by submitting a post-deposition affidavit on summary judgment that contradicts earlier deposition testimony and other proceedings.[2] *Wendorf*, 683 F. Supp. 2d at 544 ("'A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction.'") (quoting *Aerel, S.R.L.*, 448 F.3d at 908)

With the affidavit stricken, what is left is no more than unsupported allegations as there is no physical or documentary evidence to add support to Plaintiff's account of an anal cavity search beyond the allegations in his Complaint, meanwhile Defendants have submitted substantial evidentiary support for their position. *Willis v. Huss*, No. 2:22-CV-00211, 2025 WL 1943001, at *7

[2] To the extent that Plaintiff's claim that Defendant Heinonen lifted his genitals during the visual strip search as reported in Plaintiff's PREA complaint and investigation report should be considered despite the lack of evidentiary support, courts have consistently held that simply lifting male genitalia during a visual strip or body cavity search, without more, is not a constitutional violation as it strikes a reasonable balance between inmate privacy and the needs of the institutions. *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 339 (2012); *Bell v. Wolfish,* 441 U.S. 520, 559 (1979) (considering the scope of the particular intrusion, how it is conducted, the justification for initiating it, and the place in which it is conducted). The search of Plaintiff was conducted outside the view of other prisoners, Defendants stated that the search stemmed from a threat to kill another officer and a cell flooding incident, and Plaintiff does not allege untoward purposes other than retaliation—an argument that the undersigned already found lacks merit.

(W.D. Mich. June 20, 2025), *report and recommendation adopted*, 2025 WL 1940482 (W.D. Mich. July 15, 2025) ("Allegations or conclusory evidence fail to create a genuine issue of material fact.") (citing *Reedy v. West,* 988 F.3d 907, 914 (6th Cir. 2021)). The Sixth Circuit explained that "[t]he purpose of summary judgment is to determine whether a material fact dispute exists for the jury to resolve, not to replace conclusory allegations of the complaint or answer with conclusory allegations in an affidavit, verified complaint, or deposition." *Id*.

In the opinion of the undersigned, Plaintiff's conclusory assertions and unsupported allegations fail to establish a genuine issue of material fact, and summary judgment on his Eighth Amendment claim against Defendant Heinonen is appropriate.

## IV. RECOMMENDATION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that Defendants Doyle, Heinonen, and Kinaia's *Motion for Summary Judgment* (ECF No. 75) be **GRANTED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Hum. Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Tchrs. Loc. 231, Am. Fed'n of Tchrs., AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections lack merit, it may rule without awaiting the response.

Date: September 8, 2026.

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 8, 2026, by electronic means and/or ordinary mail.

s/Sara Krause
Case Manager
(810) 341-7850